1  LEXINGTON LAW GROUP
   Mark N. Todzo, State Bar No. 168389
2  Donna F. Solen, State Bar No. 297051
   Abigail Blodgett, State Bar No. 278813
3  503 Divisadero Street
   San Francisco, CA 94117
4  Telephone: (415) 913-7800
   Facsimile: (415) 759-4112
5  mtodzo@lexlawgroup.com
   dsolen@lexlawgroup.com
6  ablodgett@lexlawgroup.com

7  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
   Christopher M. Burke, State Bar No. 214799
8  John Jasnoch, State Bar No. 281605
   Kate Lv, State Bar No. 302704
9  707 Broadway, Suite 1000
   San Diego, CA 92101
10 Tel: (619) 233-4565
   Fax: (619) 233-0508
11 cburke@scott-scott.com
   jjasnoch@scott-scott.com
12 klv@scott-scott.com

13 Attorneys for Plaintiff

14

15

16                  **UNITED STATES DISTRICT COURT**

17               **NORTHERN DISTRICT OF CALIFORNIA**

18                  **SAN FRANCISCO DIVISION**

19

20

21 JEROD HARRIS,                        Case No.

                   Plaintiff,
22                                       **CLASS ACTION COMPLAINT**

23         vs.

24 R.J. REYNOLDS VAPOR COMPANY,

                   Defendant.
25

26

27

28

Plaintiff Jerod Harris ("Plaintiff"), a California resident, individually and on behalf of other similarly situated individuals, alleges the following Class Action Complaint against Defendant R.J. Reynolds Vapor Company and its affiliates known and unknown ("Defendant") involved in the manufacturing, distributing, and selling of Vuse Electronic Cigarettes (the "Products"). Plaintiff, based on his personal knowledge and investigation of his counsel, hereby alleges the following:

## INTRODUCTION

1. This Complaint seeks to remedy Defendant's deceptive and unfair sales of Vuse electronic cigarettes in California. Consumers of the Products are exposed to significant amounts of harmful carcinogens when using the Products as directed. Yet, Defendant not only fails to warn consumers of such cancer-causing chemicals, but it utterly fails to disclose the presence of such chemicals.

2. Under California law, companies exposing individuals to cancer-causing chemicals are required to warn those individuals regarding this exposure. Defendant's failure to provide the legally required cancer warnings for the Products constitutes a material omission that is likely to deceive ordinary consumers.

3. Material omissions in the face of a duty to disclose constitute unfair competition in violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* and the California Consumers Legal Remedies Act Civ. Code § 1750, *et seq.*

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the parties in this case. Plaintiff Jerod Harris is a citizen of California. Defendant R.J. Reynolds Vapor Company purposefully avails itself of the California consumer market, and sells the Products to locations throughout California, where the Products are purchased by California consumers.

5. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class

1   is a citizen of a state different from any defendant, and the matter in controversy exceeds the sum

2   of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that there are at least 100

3   members in the proposed class, Plaintiff is citizen of a state different from Defendant, and the total

4   claims of individual members of the proposed Class (as defined herein) are well in excess of

5   $5,000,000.00 in the aggregate, exclusive of interest and costs.

6   6.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in

7   furtherance of the alleged improper conduct, including the failure to disclose material information

8   regarding the nature, quality, and toxicity of the Products, occurred within this District.

9   **INTRADISTRICT ASSIGNMENT**

10  7.      Assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c)

11  and (d) because a substantial part of the events or omissions that give rise to the claim—including

12  the dissemination of false and misleading information regarding the nature, quality, and toxicity of

13  the Products—occurred within the Counties of Alameda, Contra Costa, Del Norte, Humboldt,

14  Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, and Sonoma.

15  **PARTIES**

16  **Individual and Representative Plaintiff**

17  8.      Plaintiff Jerod Harris is an individual consumer who, at all times material hereto,

18  was a citizen of Orange County, California.  During the Class period, as defined below, Plaintiff

19  purchased the Products in Dana Point, Orange County, California.

20  9.      Plaintiff relied on Defendant's false, misleading, and deceptive material omissions

21  concerning the nature of the products.  Plaintiff would not have purchased, or would have paid

22  less for, the Product had he known the material facts omitted by Defendant: that the Products will

23  expose users to carcinogenic toxins such as formaldehyde and acetaldehyde.

24  10.     If Plaintiff knew that labels on Defendant's Products were truthful and not

25  misleading, he would consider purchasing the Product in the future. At present, however, Plaintiff

26  cannot be confident that the labeling of the Product is, and will be, truthful and non-misleading.

27  **Defendant**

28  11.     Defendant R.J. Reynolds Vapor Company is incorporated in the state of North

1   Carolina and maintains its principal place of business at 401 North Main Street, Winston-Salem,

2   North Carolina 27101.  It also operates in plants, business and technical centers, and customer

3   business (sales) centers all over the United States, and in California.

4                              **COMMON FACTUAL ALLEGATIONS**

5   **E-Cigarette History**

6          12.     E-cigarettes are battery-operated devices, often designed to resemble a tobacco

7   cigarette, that deliver a nicotine containing aerosol that is inhaled by the user.  As a result of

8   aggressive and unrestricted marketing, increased restrictions on the use of traditional cigarettes,

9   and a perception that the e-cigarettes are "healthy" alternatives to traditional smoking, e-cigarette

10  use has exploded since their introduction in the U.S. in 2007.[1]  Despite the perception as a

11  "healthy" alternative, studies reveal multiple problems with e-cigarette device use including health

12  risks to the user, the adverse impact on the health and safety of children, teens, and young adults,

13  and a lack of scientific evidence showing that e-cigarettes are effective smoking cessation devices

14  or that they reduce their consumption.

15         13.     Unlike traditional cigarettes where tobacco leaf is burned and the resulting smoke

16  inhaled, e-cigarettes heat liquid that generally contains nicotine, flavorings, additives and

17  propylene glycol.[2]  The heated e-liquid is not just water vapor, as many believe.[3]  Rather, it is

18  turned into an aerosol that is inhaled by the user.[4]

19         14.     One of the largest concerns over the use of e-cigarettes is its impact on the health

20  and safety of children, teens, and young adults.  Studies indicate that e-cigarette use among middle

21  and high school students more than doubled from 2011 to 2012.[5]  An analysis of the 2011-2013

22         [1] *See* Ron Chapman, MD, MPH, *California Department of Public Health, California

23  *Tobacco Control Program, State Health Officer's Report on E-Cigarettes: A Community Health
    Threat*, (January 2015), at 6,

24  http://www.cdph.ca.gov/programs/tobacco/Documents/Media/State%20Health-e-
    cig%20report.pdf.

25         [2] *Id.* at 3.

26         [3] *Id.*

27         [4] *Id.*

28         [5] Catherine Corey, MSPH, *et al.*, *Notes From the Field: Electronic Cigarette Use Among*

National Youth and Tobacco Survey reported that more than a quarter-million youth who had never smoked a traditional cigarette used e-cigarettes in 2013, a three-fold increase since 2011, and that youth who used e-cigarettes were nearly twice as likely to try traditional cigarettes as those who never used e-cigarettes.[6]

15.     This dramatic rise in adolescent use is directly tied to aggressive marketing efforts of e-cigarettes.  E-cigarettes ads are found on TV, radio, magazines, newspapers, and online, particularly on social media sites such as Facebook, Instagram, YouTube, and Twitter.[7]  In only three years, money spent on e-cigarettes advertising has increased 1,200 percent or 12-fold.[8]  The industry spent $39 million on advertising between June and November 2013, alone.[9]

16.     Moreover, a number of recent studies have shown that e-cigarette users are no more likely to quit than regular smokers, including one study finding that 89 percent of e-cigarettes users are still using them one year later.[10]  Another study showed that e-cigarette users are a third less likely to quit cigarettes, contradicting the theory that the e-cigarettes help people successfully quit the nicotine habit.[11]  Finally, statistics show that dual use of traditional and e-cigarettes is continuing to rise, which may lessen any potential benefit of cutting back on tobacco cigarettes.[12]

---

*Middle and High School Students—United States, 2011-2012*, Center for Disease Control and Prevention, MMWR Morbidity and Mortality Weekly Report (2013) 62(35):729-730 (September 6, 2013), http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6235a6.htm?utm_source=rss&utm_medium=rss&utm_campaign=notes-from-the-field-electronic-cigarette-use-among-middle-and-high-school-students-united-states-20112012.

[6] *See* Rebecca E. Bunnell, *et al.*, *Intentions to smoke cigarettes among never-smoking U.S. middle and high school electronic cigarette users, National Youth Tobacco Survey, 2011-2013,* Nicotine & Tobacco Research, (2014), http://ntr.oxfordjournals.org/content/early/2014/08/18/ntr.ntu166.full.pdf+html.

[7] *See* Chapman, *Community Health Threat*, *supra*, at 7.

[8] *Id.*

[9] Legacy, *Vaporized: E-cigarettes, Advertising, and Youth,* (May 2014), at 7, http://legacyforhealth.org/content/download/4542/63436/version/1/file/LEG-Vaporized-E-cig_Report-May2014.pdf.

[10] *See* Chapman, *Community Health Threat*, *supra*, at 6.

[11] *See id.*

[12] *Id.* at 7.

**Carcinogenic Dangers of E-Cigarettes**

17.     To date, e-cigarettes are not required to receive pre-market approval of any kind. Accordingly, there has been a lack of data concerning health effects of e-cigarette use.

18.     Nevertheless, published studies reveal that the aerosol inhaled by users of e-cigarettes contains toxic chemicals including formaldehyde and acetaldehyde.[13]  The aerosol also contains high concentrations of ultrafine particles that are inhaled and become trapped in the lungs.[14]  Once inhaled, these chemicals travel through the circulatory system, affecting the brain and all organs.[15]

19.     A small study in 2015 demonstrated that e-cigarettes produce formaldehyde, which is present in the aerosol inhaled by users.[16]

20.     Recent independent testing of Defendant's e-cigarettes revealed the presence of significant amounts of formaldehyde and acetaldehyde in the aerosol produced by the Products.

**Defendant's Unfair and Deceptive Practices**

21.     Defendant manufactures, distributes, and sells the Products in California. The Products, when used as directed and intended, expose users to significant quantities of formaldehyde and acetaldehyde.

22.     Defendant's Products expose Plaintiff and the class members to carcinogenic toxins.  The exposure to carcinogenic toxins is information that is material to a reasonable consumer.

23.     Despite the fact that Defendant exposes consumers of the Products to formaldehyde and acetaldehyde, Defendant fails to provide any warnings whatsoever about the carcinogenic hazards associated with such exposure.

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] R. Paul Jensen, et al., *Hidden Formaldehyde in E-Cigarette Aerosols*, New England Journal of Medicine, 372;392-394 (Jan. 22, 2015), http://www.nejm.org/doi/full/10.1056/NEJMc1413069.

24.     Defendant's failure to tell consumers that they are buying e-cigarette Products that will expose them to the carcinogenic toxins formaldehyde and acetaldehyde is a material omission.

25.     Defendant knowingly fails to disclose to consumers the presence of the carcinogenic toxins formaldehyde and acetaldehyde in the Products.

26.     The People of the State of California have declared by initiative under Proposition 65 their right "[t]o be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm."  Proposition 65, § 1(b).

27.     To effectuate this goal, California's Proposition 65, Health & Safety Code § 25249.5, *et seq.*, prohibits exposing people to chemicals listed by the State of California as known to cause cancer, birth defects or other reproductive harm above certain levels without a "clear and reasonable warning" unless the business responsible for the exposure can prove that it fits within a statutory exemption.

28.     In 1988, the Office of Environmental Health Hazard Assessment of the California Environmental Protection Agency added both formaldehyde and acetaldehyde to California's Proposition 65 list of chemicals known to cause cancer, birth defects, or reproductive harm. Formaldehyde and acetaldehyde are specifically identified as chemicals known to cause cancer.

29.     Defendant either had actual knowledge of the fact that use of the Products expose users to formaldehyde and acetaldehyde, or it was reckless in not knowing.

30.     The Products, when used as directed, produce significant amounts of formaldehyde and acetaldehyde in the aerosol inhaled by users.  Thus, the intended use of the Products results in exposure to formaldehyde and acetaldehyde.

31.     Plaintiff and the members of the Class do or did not know that use of the Products would expose them to formaldehyde and acetaldehyde.

32.     Plaintiff and the members of the Class would not have purchased or paid as much for the Products had they known the Products would expose them to formaldehyde and acetaldehyde.

33.     Defendant's material omissions are likely to deceive a reasonable consumer.

34.     The Products have been sold by Defendant for use in California since at least 2013.

35.     At the time Defendant began selling the Products in California, the public perception of e-cigarettes was that such products were a healthy alternative to smoking because although e-cigarettes contained nicotine, they did not expose users to carcinogens.  Defendant knew of this public misperception regarding the true nature of e-cigarettes, yet introduced the Products without disclosing the carcinogenic exposures resulting from ordinary use thereof.

36.     Defendant continues to manufacture, distribute, and sell the Products to consumers in California while knowingly failing to disclose the presence of toxins formaldehyde and acetaldehyde in the Products.

### CLASS ALLEGATIONS

37.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of a proposed plaintiff Class pursuant to Federal Rule of Civil Procedure 23.  This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

38.     The Class is defined as:

> All persons in California who purchase one or more Products from Defendant from July 1, 2013 through the present (the "Class Period").

39.     Excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

**Numerosity and Ascertainability**

40.     The members of each class are so numerous that joinder of all members is impracticable.  While the exact number of class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that each class numbers in the thousands.

41.     Plaintiff is a representative of all other consumers who have purchased Defendant's Products in California where Defendant failed to disclose that use of the products will expose users to the carcinogenic toxins formaldehyde and acetaldehyde, and is acting on behalf of those

1   consumers' interests. The similarly situated consumers are readily identifiable through self-

2   identification, through customer receipts, and through Defendant's own business records.

3       **Typicality**

4       42.     Plaintiff purchased Defendant's Products in California during the Class Period. All

5   of the Products purchased by Plaintiff failed warn or disclose that use of the Products would

6   expose him to chemicals known to cause cancer.

7       43.     During the Class Period, the Defendants failed to disclose the presence of

8   carcinogenic toxins formaldehyde and acetaldehyde in the Products purchased by class members.

9       44.     The claims of the representative Plaintiff are typical of the claims of the Class, in

10   that the representative Plaintiff, like all members of the Class, purchased the Products and

11   Defendant failed to disclose the presence of carcinogenic toxins formaldehyde and acetaldehyde in

12   those Products.

13       **Adequacy**

14       45.     Plaintiff will fairly and adequately represent and protect the interests of the

15   members of each class. Plaintiff does not have any interests that are adverse to those of the class

16   members. Plaintiff has retained competent counsel experienced in class action litigation and

17   intends to prosecute this action vigorously.

18       **Common Questions Predominate**

19       46.     There are numerous questions of law and fact common to all class members, and

20   those questions predominate over any questions that may affect only individual class members.

21   The common questions will generate common answers that are likely to drive the resolution of this

22   action.

23       47.     Questions of law and fact common to the members of the Class that predominate

24   over questions that may affect individual Class members include:

25           a.    Whether Defendant's Products expose class members to formaldehyde and

26              acetaldehyde;

27           b.    Whether Defendant is under a duty to disclose the presence of formaldehyde

28              and acetaldehyde in the Products to class members;

c. Whether Defendant knew or should have known of the presence of formaldehyde and acetaldehyde in the products;

d. Whether Defendant failed to disclose the presence of formaldehyde and acetaldehyde in the Products;

e. Whether Defendant's failure to disclose the presence of carcinogenic toxins formaldehyde and acetaldehyde in the Products violated California's Consumers Legal Remedies Act ("CLRA");

f. Whether Defendant's failure to disclose the presence of carcinogenic toxins formaldehyde and acetaldehyde in the Products was likely to mislead or deceive ordinary consumers, and therefore fraudulent, within the meaning of Bus. & Prof. Code § 17200, et seq.;

g. Whether Defendant's failure to disclose the presence of carcinogenic toxins formaldehyde and acetaldehyde in the Products was and is unfair within the meaning of Bus. & Prof. Code § 17200, et seq.;

h. Whether Defendant's failure to disclose the presence of carcinogenic toxins formaldehyde and acetaldehyde in the Products violated Bus. & Prof. Code § 17200, et seq.;

i. Whether Defendant should be declared financially responsible for notifying all class members of the presence of formaldehyde and acetaldehyde in the Products;

j. Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages;

k. Whether Defendant should be enjoined from engaging in the methods, acts or practices alleged herein; and

l. Whether Defendant should be ordered to disgorge, for the benefit of the Class, its ill-gotten profits received from the sale of its Products.

**Superiority**

48. A class action is superior to other available methods for the fair and efficient

1    adjudication of this controversy.

2        49.    The prerequisites to maintaining a class action for injunctive or equitable relief are

3    met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby

4    making appropriate final injunctive or equitable relief with respect to the Class as a whole.

5        50.    The prosecution of separate actions by individual members of the Class and would

6    create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for

7    Defendant.  For example, one court might enjoin Defendant from performing the challenged acts,

8    whereas another might not.  Additionally, individual actions could be dispositive of the interests of

9    the Class even where certain Class members are not parties to such actions.

10        51.    Defendant's conduct is generally applicable to the Class as a whole and Plaintiff

11    seeks, *inter alia*, equitable remedies with respect to the Classes as a whole.  As such, Defendant's

12    systematic failure to disclose material information makes declaratory and injunctive relief with

13    respect to the Class as a whole appropriate.

14        52.    A class action is superior to all other available methods for the fair and efficient

15    adjudication of this controversy.  Without a class action, individual Class members would face

16    burdensome litigation expenses, deterring them from bringing suit or adequately protecting their

17    rights.  Class members would continue to incur harm without remedy absent a class action, while

18    Defendant would continue to reap the benefits of its misconduct.  In addition, class litigation is

19    superior because it will obviate the need for unduly duplicative litigation that might result in

20    inconsistent judgments about the legality of Defendant's sales and advertising practices.

21                        **FIRST CAUSE OF ACTION**
     **(Violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.***
22                        **Based on Deceptive Practices)**

23        53.    Plaintiff incorporates by reference the allegations contained in the preceding

24    paragraphs of this Complaint.

25        54.    By committing the acts and practices alleged herein, Defendant has violated

26    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the

27    Class as a whole, by engaging in fraudulent conduct.

28

55.     Defendant's failure to disclose that the Products expose users to formaldehyde and acetaldehyde violates the UCL's proscription against engaging in fraudulent conduct.

56.     As more fully described above, Defendant's failure to disclose that the Products expose users to formaldehyde and acetaldehyde is likely to deceive reasonable consumers. Indeed, Plaintiff and the other members of the Class were unquestionably deceived regarding the safety and health benefits of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresent and omit the true facts about the Products.  These acts constitute fraudulent and unfair business practices.

57.     Further, Defendant's failure to warn of the carcinogenic exposures resulting from use of the Products is contrary to California law and policy, which obligates Defendant to provide such information to consumers.

58.     Plaintiff and the members of the Class have suffered injury in fact and have lost money or property because they paid more for the Products as a direct result of Defendant's failure to disclose that the Products expose them to formaldehyde and acetaldehyde.  Had Plaintiff and the Class members known the true nature of the Products, they would not have purchased them or they would have paid less for them.

59.     Plaintiff and the other Class members had no way of reasonably knowing that use of the Products they purchased would expose them to the carcinogenic toxins formaldehyde and acetaldehyde. Thus, could not have reasonably avoided the injury each of them suffered.

60.     Defendant's violations of the UCL continue to this day.

**SECOND CAUSE OF ACTION**
**(Violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*
Based on Unfair Acts and Practices)**

61.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

62.     Under Cal. Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

63.     Defendant has engaged, and continues to engage, in conduct which is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.  This conduct includes, but is not limited to, failing to disclose that use of the Products expose users to formaldehyde and acetaldehyde.  The gravity of harm caused by Defendant's conduct as described herein far outweighs the utility, if any, of such conduct.

64.     Defendant has engaged, and continues to engage, in conduct that violates California law and policy, which obligates Defendant to inform consumers and provide clear and reasonable warnings when exposing consumers to chemicals listed by the State of California as known to cancer. Defendant has further engaged, and continues to engage, in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits, and quality of goods for sale.

65.     Defendant's conduct, including failing to disclose that use of the Products expose users to formaldehyde and acetaldehyde, is substantially injurious to consumers.  Such conduct has and continues to cause substantial injury to consumers because consumers would not have purchased the Products at all, or would not have paid such a high price for the Products, but for Defendant's failure to disclose that use of the Products exposes the user to formaldehyde and acetaldehyde.  Consumers have thus overpaid for the Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on Defendant's representations of the Products and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.

66.     By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of Cal. Business & Professions Code § 17200.

67.     An action for injunctive relief and restitution is specifically authorized under Cal. Business & Professions Code § 17203.

68.     Plaintiff and the members of the Class have suffered injury in fact and have lost money or property because they paid more for the Products as a direct result of Defendant's failure

1    to disclose that the Products expose them to formaldehyde and acetaldehyde.  Had Plaintiff and the

2    Class members known the true nature of the Products, they would not have purchased them or

3    they would have paid less for them.

4                              **THIRD CAUSE OF ACTION**
        **(Violation of the California Consumers Legal Remedies Act Civ. Code § 1750, *et seq.*)**
5

6        69.    Plaintiff incorporates by reference the allegations contained in the preceding

7    paragraphs of this Complaint.

8        70.    Defendant  R.J. Reynolds Vapor Company  is a "person" as defined by Civil Code

9    § 1761(c).

10       71.    Plaintiff and many Class members are "consumers" within the meaning of Civil

11   Code § 1761(d).

12       72.    Defendant's e-cigarette Products are "goods" within the meaning of Civil Code

13   §1761(a).

14       73.    Defendant is obligated by law to disclose the fact that Products expose users to

15   carcinogenic chemicals.

16       74.    As alleged more fully above, Defendant violated the CLRA by failing to comply

17   with its duty to disclose to Plaintiff and Class members that use of its e-cigarette Products exposes

18   the user to formaldehyde and acetaldehyde.  Specifically, Defendant's failure to disclose material

19   facts regarding its e-cigarette Products violated (a) § 1770(a)(5)'s proscription against representing

20   that goods have characteristics or benefits they do not actually have; and (b) § 1770(a)(7)'s

21   proscription against representing that goods are of a particular standard or quality when they are of

22   another.

23       75.    Defendant's wrongful conduct continues to this day.

24       76.    Plaintiff and the members of the Class have suffered damage as a direct result of

25   Defendant's failure to disclose that use of its Products expose the user to formaldehyde and

26   acetaldehyde.  Had Plaintiff and the Class members known the true nature of the Products, they

27   would not have purchased them or they would have paid less for them.

28

77.     Defendant's omissions were designed to induce Plaintiff and members of the Class to purchase the Products.

78.     If Plaintiff knew that labels on Defendant's Products were truthful and not misleading, he would consider purchasing the Product in the future. At present, however, Plaintiff cannot be confident that the labeling of the Product is, and will be, truthful and non-misleading.

79.     Plaintiff and the members of the Class are providing Defendant with the notice required by the Consumers Legal Remedies Act by giving notice of Defendant's violations of the Act by certified mail.  Plaintiff and the Class at this time request only injunctive relief, until the expiration of the thirty-day period in which Defendant may respond to the notice.  Plaintiff and the Class will amend the Complaint to add claims for damages in the event Defendant does not respond to the notice in the specified time. As such, Plaintiff has complied with California Civil Code section 1782(a).

80.     Plaintiff and the Class members may be irreparably harmed or denied effective or complete remedy if such an order is not granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Class as follows:

A.     An order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel

B.     A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.     An award of restitution;

D.     An award of restitutionary disgorgement pursuant to California Business and Professions Code § 17203 for members of the Class;

E.     An order enjoining Defendant's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code § 17203, and requiring Defendant to place clear and reasonable warnings on the packaging of the Products that use of the Products exposes the user to formaldehyde and acetaldehyde, chemicals known to the State of California to cause cancer;

1    F.    Injunctive relief for Plaintiff and members of the Class pursuant to California Civil

2    Code § 1780;

3    G.    Statutory damages in the maximum amount provided by law;

4    H.    Punitive damages in accordance with proof and in an amount consistent with

5    applicable precedent;

6    I.    An order awarding Plaintiff and the other Class members the reasonable costs and

7    expenses of suit, including their attorneys' fees; and

8    J.    Any further relief that the Court may deem appropriate.

9

10

11   DATED:  September 8, 2015                LEXINGTON LAW GROUP

12

13                                           /s/ Mark N. Todzo
                                             Mark N. Todzo
14                                           Attorneys for Plaintiff

15

16                                           SCOTT + SCOTT, ATTORNEYS AT LAW, LLP
                                             Christopher M. Burke, State Bar No. 214799
17                                           John Jasnoch, State Bar No. 281605
                                             Kate Lv, State Bar No. 302704
18                                           707 Broadway, Suite 1000
                                             San Diego, CA 92101
19                                           Tel: (619) 233-4565
                                             Fax: (619) 233-0508
20                                           cburke@scott-scott.com
                                             jjasnoch@scott-scott.com
21                                           klv@scott-scott.com

22                                           Joseph P. Guglielmo
                                             Erin Green Comite
23                                           405 Lexington Avenue, 40th Floor
                                             New York, NY 10174
24                                           212-223-6444
                                             Email: jguglielmo@scott-scott.com
25                                           Email: ecomite@scott-scott.com

26

27

28