LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Lucas Williams, State Bar No. 264518
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
lwilliams@lexlawgroup.com

SCOTT+SCOTT LLP
Christopher M. Burke, State Bar No. 214799
John T. Jasnoch, State Bar No. 281605
Kate Lv, State Bar No. 302704
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com
jjasnoch@scott-scott.com
klv@scott-scott.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JEROD HARRIS,<br><br>                    Plaintiff,<br><br>      vs.<br><br>R.J. REYNOLDS VAPOR COMPANY,<br><br><br>                    Defendant. | Case No. 3:15-cv-04075-JD<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Complaint Filed: September 8, 2015 |

1      Plaintiff Jerod Harris ("Plaintiff"), a California resident, individually and on behalf of

2  other similarly situated individuals, alleges the following Class Action Complaint against

3  Defendant R.J. Reynolds Vapor Company and its affiliates known and unknown ("Defendant")

4  involved in the manufacturing, distributing and selling of Vuse Electronic Cigarettes.  Plaintiff,

5  based on his personal knowledge and investigation of his counsel, hereby alleges the following:

6                                    **INTRODUCTION**

7      1.      This Second Amended Complaint ("SAC") seeks to remedy Defendant's deceptive

8  and unfair sales of Vuse Electronic Cigarettes (the "Product(s)") in California.  The Products are

9  positioned, marketed and sold as producing only "vapor" unlike traditional cigarette smoke.

10  Nevertheless, the Products produce an aerosol containing significant amounts of harmful

11  carcinogens such as formaldehyde and acetaldehyde as well as other harmful toxins such as

12  ultrafine particles, most of which are present in traditional cigarette smoke.  Consumers of the

13  Products are exposed to these harmful carcinogens and toxins when using the Products as directed.

14  Yet, Defendant not only fails to warn consumers of such cancer-causing and other toxic chemicals,

15  but it utterly fails to disclose the presence of such chemicals.  Indeed, one of the carcinogens the

16  Products cause consumers to inhale, formaldehyde, is widely known for its use in embalming

17  fluid.  Plaintiff did not want to inhale embalming fluid and was shocked to learn that was the case.

18      2.      Under California law, companies exposing individuals to cancer-causing and other

19  toxic chemicals are required to warn those individuals regarding such exposures.  Defendant's

20  failure to provide the required warnings constitutes material omissions that are likely to deceive

21  reasonable consumers.  Defendant's affirmative misrepresentations and partial representations

22  regarding the nature, quality and toxicity of the aerosol produced by the Products and inhaled by

23  users exacerbate the deception.

24      3.      Violations of statutory obligations constitute unfair competition in violation of

25  California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* (the "UCL").  Material

26  omissions in the face of a duty to disclose and affirmative misrepresentations regarding the health

27  and safety of consumer products also constitute unfair competition in violation of the UCL and

28

-1-

1   violations of the California Consumers Legal Remedies Act, Civ. Code § 1750, *et seq.* (the

2   "CLRA").

3                              **JURISDICTION AND VENUE**

4        4.      This Court has personal jurisdiction over the parties in this case.  Plaintiff Jerod

5   Harris is a citizen of California.  Defendant R.J. Reynolds Vapor Company purposefully avails

6   itself of the California consumer market, and sells the Products to locations throughout California,

7   where the Products are purchased by California consumers.

8        5.      This Court has original subject-matter jurisdiction over this proposed class action

9   pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act

10  ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action

11  in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class

12  is a citizen of a state different from any defendant, and the matter in controversy exceeds the sum

13  of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that there are at least 100

14  members in the proposed class, Plaintiff is a citizen of a state different from Defendant, and the

15  total claims of individual members of the proposed Class (as defined herein) are well in excess of

16  $5,000,000.00 in the aggregate, exclusive of interest and costs.

17       6.      Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in

18  furtherance of the alleged improper conduct, including the failure to disclose material information

19  and material misrepresentations regarding the nature, quality and toxicity of the Products, occurred

20  within this District.

21                           **INTRADISTRICT ASSIGNMENT**

22       7.      Assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c)

23  and (d) because a substantial part of the events or omissions that give rise to the claim—including

24  the dissemination of false and misleading information regarding the nature, quality, and toxicity of

25  the Products—occurred within the Counties of Alameda, Contra Costa, Del Norte, Humboldt,

26  Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, and Sonoma.

27

28

**PARTIES**

**Individual and Representative Plaintiff**

8.      Plaintiff Jerod Harris is an individual consumer who, at all times material hereto, was a citizen of Orange County, California.  During the Class period, as defined below, Plaintiff purchased the Products in Dana Point, Orange County, California.

9.      More specifically, during the period from January 2015 to April 2015, Plaintiff purchased the Vuse Solo original flavor numerous times at locations throughout South Orange County such as Circle K, Mobil Gas Station and Party Time Liquor Store.  The packaging for the Products he purchased did not disclose that the user would be or could be exposed to formaldehyde, acetaldehyde or ultrafine particles.  Nor did the packaging include a warning that users of the Products would or could be exposed to chemicals known to the State of California to cause cancer.

10.      During this same time period, Plaintiff read Defendant's representations on its website that the Products produce only "vapor," not cigarette smoke.  Plaintiff understood such representations to mean that the Products' vapor is, unlike cigarette smoke, harmless and does not contain carcinogens, other toxic chemicals and/or particles that can get lodged deep in his lungs. For example, Plaintiff was aware that formaldehyde is commonly used as an embalming fluid. Plaintiff was then shocked to learn that the supposedly harmless vapor produced by the Products he purchased contains significant quantities of formaldehyde.

11.      Plaintiff relied on Defendant's false, misleading and deceptive material omissions and misrepresentations concerning the nature of the Products.  Plaintiff would not have purchased, or would have paid less for, the Products had he known that the Products did not produce only vapor, but that the Products expose users to carcinogenic chemicals such as formaldehyde and acetaldehyde and other harmful toxins such as ultrafine particles.

12.      Plaintiff thought the Products were a non-harmful alternative to smoking traditional cigarettes.  Plaintiff paid a premium for Products he believed allowed him to inhale nicotine without any of the other harmful constituents of cigarette smoke.

13.     If Plaintiff knew that the labels, advertisements and other representations regarding Defendant's Products were truthful and such Products produced only a harmless "vapor," he would consider purchasing the Products in the future.  At present, however, Plaintiff cannot be confident that Defendant's representations regarding the Products are, and will be, truthful and non-misleading.  Plaintiff is concerned regarding the adverse health effects of using the Products and is thus interested in learning all of the facts known to Defendant regarding the toxic exposures resulting from their use.

**Defendant**

14.     Defendant R.J. Reynolds Vapor Company is incorporated in the state of North Carolina and maintains its principal place of business at 401 North Main Street, Winston-Salem, North Carolina 27101.  It also operates in plants, business and technical centers, and customer business (sales) centers all over the United States, and in California.

## COMMON FACTUAL ALLEGATIONS

**E-Cigarette History**

15.     E-cigarettes are battery-operated devices, often designed to resemble a tobacco cigarette, that deliver a nicotine containing aerosol that is inhaled by the user.  As a result of aggressive and unrestricted marketing, increased restrictions on the use of traditional cigarettes, and a perception that e-cigarettes are "healthy" alternatives to traditional smoking, e-cigarette use has exploded since their introduction in the U.S. in 2007.[1]  Despite the perception as a "healthy" alternative, studies reveal multiple problems with e-cigarette device use including health risks to the user, the adverse impact on the health and safety of children, teens, and young adults, and a lack of scientific evidence showing that e-cigarettes are effective smoking cessation devices or that they reduce their consumption.

16.     Unlike traditional cigarettes where tobacco leaf is burned and the resulting smoke

---

[1] *See* Ron Chapman, MD, MPH, *California Department of Public Health, California Tobacco Control Program, State Health Officer's Report on E-Cigarettes: A Community Health Threat*, (January 2015), at 6, https://www.cdph.ca.gov/programs/tobacco/Documents/CDPH%20CTCP%20Refresh/Policy/ESD s/State%20Health-e-cig%20report.pdf.

inhaled, e-cigarettes heat liquid that generally contains nicotine, flavorings, additives and propylene glycol.[2]  The heated e-liquid is not just water vapor as many believe, but is transformed into an aerosol that is inhaled by the user.[3]  Some e-liquids use synthetic nicotine which is not derived from tobacco plants.

17.    One of the largest concerns over the use of e-cigarettes is its impact on the health and safety of children, teens, and young adults.  Studies indicate that e-cigarette use among middle and high school students more than doubled from 2011 to 2012.[4]  An analysis of the 2011-2013 National Youth and Tobacco Survey reported that more than a quarter-million youth who had never smoked a traditional cigarette used e-cigarettes in 2013, a three-fold increase since 2011, and that youth who used e-cigarettes were nearly twice as likely to try traditional cigarettes as those who never used e-cigarettes.[5]

18.    This dramatic rise in adolescent use is directly tied to aggressive marketing efforts of e-cigarettes.  E-cigarettes ads are found on TV, radio, magazines, newspapers, and online, particularly on social media sites such as Facebook, Instagram, YouTube, and Twitter.[6]  In only three years, money spent on e-cigarettes advertising has increased 1,200 percent or 12-fold.[7]  The industry spent $39 million on advertising between June and November 2013, alone.[8]

---

[2] *Id.* at 3.

[3] *Id.*

[4] Catherine Corey, MSPH, *et al.*, *Notes From the Field: Electronic Cigarette Use Among Middle and High School Students—United States, 2011-2012*, Center for Disease Control and Prevention, MMWR Morbidity and Mortality Weekly Report (2013) 62(35):729-730 (September 6, 2013), http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6235a6.htm?utm_source=rss&utm_medium=rss&utm_campaign=notes-from-the-field-electronic-cigarette-use-among-middle-and-high-school-students-united-states-20112012.

[5] *See* Rebecca E. Bunnell, *et al.*, *Intentions to smoke cigarettes among never-smoking U.S. middle and high school electronic cigarette users, National Youth Tobacco Survey, 2011-2013,* Nicotine & Tobacco Research, (2014), http://ntr.oxfordjournals.org/content/early/2014/08/18/ntr.ntu166.full.pdf+html.

[6] *See* Chapman, *Community Health Threat, supra*, at 7.

[7] *Id.*

[8] Legacy, *Vaporized: E-cigarettes, Advertising, and Youth,* (May 2014), at 7, http://truthinitiative.org/sites/default/files/LEG-Vaporized-E-cig_Report-May2014.pdf.

19.    Moreover, a number of recent studies have shown that e-cigarette users are no more likely to quit than regular smokers, including one study finding that 89 percent of e-cigarettes users are still using cigarettes one year later.[9]  Another study showed that e-cigarette users are a third less likely to quit cigarettes, contradicting the theory that the e-cigarettes help people successfully quit the nicotine habit.[10]  Finally, statistics show that dual use of traditional and e-cigarettes is continuing to rise, which may lessen any potential benefit of cutting back on tobacco cigarettes.[11]

**Carcinogenic and Other Dangers of E-Cigarettes**

20.    To date, e-cigarettes are not required to receive pre-market approval of any kind. In fact, up until August 10, 2016 e-cigarettes were not regulated at all by the United States Food & Drug Administration.  Accordingly, there has been a lack of data concerning health effects of e-cigarette use.

21.    Nevertheless, published studies reveal that the aerosol inhaled by users of e-cigarettes contains toxic chemicals including formaldehyde and acetaldehyde.[12]  The aerosol also contains high concentrations of ultrafine particles that are inhaled and become trapped in the lungs.[13]  Once inhaled, these chemicals travel through the circulatory system, affecting the brain and all organs.[14]

22.    A small study in 2015 demonstrated that e-cigarettes produce formaldehyde, which is present in the aerosol inhaled by users.[15]

---

[9] *See* Chapman, *Community Health Threat*, *supra*, at 6.

[10] *See id.*

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] R. Paul Jensen, et al., *Hidden Formaldehyde in E-Cigarette Aerosols*, New England Journal of Medicine, 372;392-394 (Jan. 22, 2015), http://www.nejm.org/doi/full/10.1056/NEJMc1413069.

23.     Recent independent testing of Defendant's e-cigarettes revealed the presence of significant amounts of formaldehyde and acetaldehyde in the aerosol produced by the Products.

24.     Defendant is a member of an industry group called the Cooperation Centre for Scientific Research Relative to Tobacco ("CORRESTA"), which has an "E-Cigarettes Task Force" that has conducted studies on the presence of toxic chemicals in e-cigarettes, among other things.[16]

25.     Formaldehyde is a notoriously hazardous chemical.  Exposure to formaldehyde, which is present in the Products' aerosol, causes a number of adverse health impacts in addition to causing cancer.  According to the United States Department of Health and Human Services, formaldehyde exposure is known to cause nasal and eye irritation, neurological effects, increased risk of asthma or allergy, eczema, changes in lung function, decreased body weight, gastrointestinal ulcers and liver and kidney damage.[17]  Formaldehyde is commonly used as an embalming fluid.

26.     Exposure to ultrafine particles, which are present in the Products' aerosol, also causes adverse health impacts.  Negative health impacts from exposures to ultrafine particles include lung function changes, airway inflammation, enhanced allergic responses, vascular thrombogenic effects, altered endothelial function, altered heart rate and heart rate variability, accelerated atherosclerosis, and increased markers of brain inflammation.[18]

**Defendant's Unlawful, Unfair and Deceptive Practices**

**Defendant's Material Omissions**

27.     Defendant's Products expose individuals, including Plaintiff and the Class members, to the carcinogens formaldehyde and acetaldehyde as well as other toxins such as ultrafine particles.

---

[16] CORRESTA Groups, https://www.coresta.org/groups/e-vapour.

[17] USDHHS, Agency for Toxic Substances & Disease Registry Website, Toxic Substances Portal – Formaldehyde, http://www.atsdr.cdc.gov/toxfaqs/tf.asp?id=219&tid=39.

[18] Health Effects Institute Review Panel on Ultrafine Particles, *Understanding the Health Effects of Ambient Ultrafine Particles.* HEI PERSPECTIVES 3 (2013), available at http://pubs.healtheffects.org/view.php?id=394.

28.     Plaintiff and the Class members do or did not know that use of the Products would expose them to carcinogens and other toxins.

29.     The exposure to carcinogens and other harmful toxins is information that is material to a reasonable consumer.  However, Defendant fails to disclose to its customers, including Plaintiff and the Class members, that they are buying Products that will expose them to formaldehyde and acetaldehyde as well as ultrafine particles.  Defendant's failure to disclose these exposures is a material omission.

30.     Defendant's material omissions are likely to deceive a reasonable consumer.

31.     Defendant knowingly fails to disclose to consumers the presence of carcinogens and other toxins in the aerosol produced by the Products.

32.     At the time Defendant began selling the Products in California, the public perception of e-cigarettes was that such products were a healthy alternative to smoking because although e-cigarettes contained nicotine, they did not expose users to carcinogens.  Defendant knew of this public misperception regarding the true nature of e-cigarettes, yet introduced the Products without disclosing the carcinogenic and other toxic exposures resulting from their use.

33.     Indeed, the long term health risks of using e-cigarettes are largely unknown to Plaintiff and the Class members.  Defendant, however, is situated to have detailed knowledge of the health impacts of the Products through, among other things, Defendant's: (1) membership in the CORRESTA industry group which has specifically studied the potential adverse health impacts of e-cigarettes; (2) rigorous testing of the Products; and (3) obligation as a manufacturer to know of any hazards associated with the use of its Products.

34.     Defendant furthered the public's misperception regarding the health and safety of the Products by only providing health warnings regarding exposures to nicotine caused by the Products.  By warning of risks relating to nicotine, Defendant implied that those are the only significant health risks related to the Products.  This is deceptive and misleading, as Defendant omitted reference to the carcinogens and other toxins in the aerosol of the Products, and the potentially harmful effects of such chemicals.

35.     The Products have been sold by Defendant for use in California since at least 2013.

-8-

1  Defendant continues to manufacture, distribute and sell the Products to consumers in California

2  while knowingly failing to disclose the presence of carcinogens and other toxins in the Products.

3          **Defendant's Material Misrepresentations**

4        36.    The truth that the Products expose users to carcinogens and other toxins is directly

5  contradicted by Defendant's affirmative representations in advertisements and other promotions of

6  the Products  that, among other things, the Products produce only a harmless "vapor" unlike

7  traditional cigarette smoke, are subject to rigorous testing to ensure safety and use only the highest

8  quality ingredients under strict manufacturing standards.  Specifically, Defendant makes the

9  following representations regarding the health and safety of the Products, among others:

- "VUSE products produce vapor, not smoke. They do not burn tobacco, but rather, heat liquid containing nicotine derived from tobacco."

  https://vusevapor.com/FooterLinks/ProductFAQs.

- "VUSE digital vapor cigarettes are subject to rigorous testing so that consumers can be assured of the highest quality in taste and safety features."

  http://rjrvapor.com/Pages/Commitment.aspx.

- "VUSE presents an alternative for adult smokers who may be interested in switching to a smoke-free tobacco product."

  https://vusevapor.com/FooterLinks/ProductFAQs.

- "[W]e believe that . . . non-combustible smoke-free products, such as vapor products and other innovations, may reduce harm to smokers who switch to them."

  http://www.transformingtobacco.com.

- "There is a growing body of scientific evidence that . . . non-combustible tobacco products such as vapor products may present less risk than cigarette smoking."

  http://sustainability.reynoldsamerican.com/tobacco-harm-reduction.

While making these and other representations concerning the nature, health and safety of the

Products, Defendant failed and continues to fail to disclose the presence of carcinogens and other

toxins in the aerosol of the Products to Plaintiff and the Class members.

       37.    Some of Defendant's marketing materials state that the Products are a "tobacco

-9-

1  product, and no tobacco product is safe or without risk."

2  https://vusevapor.com/FooterLinks/ProductFAQs.  However, Defendant simultaneously makes

3  representations regarding the Products that make it appear to reasonable consumers that the

4  Products do not in fact qualify as "tobacco products," including:

5  - • "VUSE products produce vapor, not smoke.  They do not burn tobacco, but rather,

6      heat liquid containing nicotine derived from tobacco."  *Id.*

7  - • "VUSE products do not produce tobacco smoke.  'Smoking' or 'smoke'

8      specifically means the burning of a lighted cigarette, cigar, pipe, or any other matter

9      or substance that contains a tobacco product."  *Id.*

10 - • "VUSE products do not contain actual tobacco.  However, the nicotine in VUSE is

11     derived from tobacco."  *Id.*

12     38.     Some e-cigarettes are made with synthetic nicotine.  Although Defendant claims

13 that the Products' e-liquid contains nicotine derived from tobacco, there is no evidence supporting

14 the truth of Defendant's claim.

15 **Defendant's Material Omissions Violate California Law**

16     39.     This SAC does not allege violations of California Health & Safety Code § 25249.5,

17 *et seq.* ("Proposition 65").  Although this SAC does not allege a Proposition 65 claim, Proposition

18 65 is relevant to the extent it provides guidance as to a reasonable consumer's purchasing

19 decisions in California.

20     40.     Proposition 65 is a powerful statute that regulates exposures to a specified list of

21 chemicals.  By its own terms, Proposition 65 regulates only certain exposures to carcinogens and

22 reproductive toxins.  While it requires specific cancer and reproductive health hazard warnings

23 prior to exposures to listed chemicals, it does not regulate the health effects of listed chemicals

24 other than cancer and reproductive harm.  Nor does Proposition 65 regulate exposures to

25 chemicals that are not included on the list of chemicals known by the State of California to cause

26 cancer or reproductive harm.

27     41.     Defendant's failure to disclose the presence of significant amounts of the

28 carcinogenic chemicals formaldehyde and acetaldehyde in the Products violates Proposition 65.

42.    The People of the State of California have declared by initiative under Proposition 65 their right "[t]o be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm."  Proposition 65 § 1(b).

43.    To effectuate this goal, Proposition 65 prohibits exposing people to chemicals listed by the State of California as known to cause cancer, birth defects, or other reproductive harm without a "clear and reasonable warning" unless the business responsible for the exposure can prove that it fits within a statutory exemption.  Cal. Health & Safety Code § 25249.6 states, in pertinent part:

> No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual. . . .

44.    On January 1, 1988, the State of California officially listed formaldehyde as a chemical known to cause cancer.  27 Cal. Code Regs. ("C.C.R.") § 27001(b).  On January 1, 1989, one year after it was listed as a chemical known to cause cancer, formaldehyde became subject to the clear and reasonable warning requirement regarding carcinogenicity under Proposition 65.  *Id.*; Health & Safety Code § 25249.10(b).  Proposition 65 does not govern the other adverse health effects caused by formaldehyde such as nasal and eye irritation, neurological effects and increased risk of asthma or allergy.

45.    On April 1, 1988, the State of California officially listed acetaldehyde as a chemical known to cause cancer.  27 C.C.R. § 27001(b).  On April 1, 1989, one year after it was listed as a chemical known to cause cancer, acetaldehyde became subject to the clear and reasonable warning requirement regarding carcinogenicity under Proposition 65.  *Id.*; Health & Safety Code § 25249.10(b).

46.    Ultrafine particles are not on the Proposition 65 list of chemicals known by the State of California to cause cancer or reproductive harm.

47.    The Products, when used as directed, produce significant amounts of formaldehyde and acetaldehyde in the aerosol inhaled by users.  Thus, the intended use of the Products results in consumer exposures to formaldehyde and acetaldehyde.

48.    Any person acting in the public interest has standing to enforce violations of Proposition 65, provided that such person has supplied the requisite public enforcers with a valid 60-Day Notice of Violation and such public enforcers are not diligently prosecuting the action within such time.  Health & Safety Code § 25249.7(d).  Although Plaintiff is not alleging a claim under Proposition 65 in this SAC, he did provide a 60-Day "Notice of Violation of Proposition 65" to the California Attorney General, the District Attorneys of every county in California, the City Attorneys of every California city with a population greater than 750,000 and to Defendant on September 8, 2015.  In compliance with Health & Safety Code § 25249.7(d) and 27 C.C.R. § 25903(b), the Notice included the following information: (1) the name and address of the violator; (2) the statute violated; (3) the time period during which violations occurred; (4) specific descriptions of the violations, including (a) the routes of exposure to formaldehyde and acetaldehyde from the Products, and (b) the specific type of Products sold and used in violation of Proposition 65; and (5) the name of the specific Proposition 65-listed chemicals that are the subject of the violations described in the Notice.  Plaintiff also sent a Certificate of Merit for the Notice to the California Attorney General, the District Attorneys of every county in California, the City Attorneys of every California city with a population greater than 750,000 and to the named Defendant.  In compliance with Health & Safety Code § 25249.7(d) and 11 C.C.R. § 3101, the Certificate certified that Plaintiff's counsel: (1) has consulted with one or more persons with relevant and appropriate experience or expertise who reviewed facts, studies or other data regarding the exposures to formaldehyde and acetaldehyde alleged in the Notice; and (2) based on the information obtained through such consultations, believes that there is a reasonable and meritorious case for a citizen enforcement action based on the facts alleged in the Notice.  In compliance with Health & Safety Code § 25249.7(d) and 11 C.C.R. § 3102, the Certificate served on the Attorney General included factual information – provided on a confidential basis – sufficient to establish the basis for the Certificate, including the identity of the person(s) consulted by Plaintiff's counsel and the facts, studies, or other data reviewed by such persons.  None of the public prosecutors with the authority to prosecute Proposition 65 violations has commenced and/or is diligently prosecuting a cause of action against Defendant under Health & Safety Code §

-12-

25249.5, *et seq.*, based on the claims asserted in CEH's Notice.

49.     Under Proposition 65, an exposure is "knowing" where the party responsible for such exposure has:

> knowledge of the fact that a[n] . . . exposure to a chemical listed pursuant to [Health and Safety Code §25249.8(a)] is occurring.  No knowledge that the . . . exposure is unlawful is required.

27 C.C.R. § 25102(n).  This knowledge may be either actual or constructive.  *See, e.g.,* Final Statement of Reasons Revised (November 4, 1988) (pursuant to former 22 C.C.R. Division 2, § 12201).

50.     Throughout the relevant time period, Defendant had either actual knowledge of the fact that use of the Products exposes users to formaldehyde and acetaldehyde, or it was reckless in not knowing.  In any event, Defendant has been informed of the formaldehyde and acetaldehyde in its Products by the 60-Day Notice of Violation and accompanying Certificate of Merit served on it by Plaintiff.

51.     Defendant manufactures, distributes, and sells the Products in California. The Products, when used as directed and intended, expose users to significant quantities of formaldehyde and acetaldehyde.

52.     Proposition 65 requires that businesses such as Defendant that cause exposures to known carcinogens such as formaldehyde and acetaldehyde, must first provide a clear and reasonable warning to those exposed regarding the carcinogenic danger.

53.     Despite the fact that Defendant exposes consumers of the Products to formaldehyde and acetaldehyde, Defendant provided no clear and reasonable warnings regarding such exposures prior to the initiation of this lawsuit.

54.     Plaintiff and the members of the Class would not have purchased or paid as much for the Products had they known the Products would expose them to formaldehyde and acetaldehyde and had the Products included the cancer warnings required by Proposition 65.

55.     Although Defendant now provides limited warnings regarding the cancer and reproductive toxicity of some of the constituents of the Products, it continues to fail to provide any

1  warnings or information concerning the other hazards associated with use of the Products such as

2  reduced lung function.

3  **PROCEDURAL HISTORY**

4      56.    On September 8, 2015, Plaintiff filed his initial Complaint.  The Complaint alleged

5  violations of the "deceptive" and "unfair" prongs of the UCL as well as the CLRA.  The original

6  Complaint did not allege a Proposition 65 cause of action.  Nor did it allege an unlawful claim

7  under the UCL predicated on violations of Proposition 65.  On the same day Plaintiff filed the

8  original Complaint, he served Defendant with a Notice and Demand under the CLRA, and a 60-

9  day Notice of Violation of Proposition 65, Cal. Health & Safety Code § 25249.7(d).  On

10  November 20, 2016, after the 60-day Proposition 65 notice period had expired, Plaintiff filed the

11  First Amended Complaint ("FAC").  The FAC added an allegation that Defendant violated the

12  UCL based on unlawful conduct by failing to provide clear and reasonable warnings regarding

13  exposures to formaldehyde and acetaldehyde as required by Proposition 65.  On September 30,

14  2016, the Court dismissed the FAC with leave to amend.

15  **CLASS ALLEGATIONS**

16      57.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others

17  similarly situated as members of a proposed plaintiff Class pursuant to Federal Rule of Civil

18  Procedure 23.  This action satisfies the ascertainability, numerosity, commonality, typicality,

19  adequacy, predominance and superiority requirements of those provisions.

20      58.    The Class is defined as:

21      All persons who purchased one or more of the Products in California from
       July 1, 2013 through the present (the "Class Period").

22

23      59.    Excluded from the Class are Defendant; the officers, directors or employees of

24  Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal

25  representative, heir or assign of Defendant.  Also excluded are any federal, state or local governmental

26  entities, any judicial officer presiding over this action and the members of his/her immediate family

27  and judicial staff, and any juror assigned to this action.

28

**Numerosity and Ascertainability**

60.    The members of the class are so numerous that joinder of all members is impracticable.  While the exact number of class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that the class numbers in the thousands.

61.    Plaintiff is a representative of all other consumers who have purchased Defendant's Products in California where Defendant failed to disclose that use of the Products will expose users to the carcinogens formaldehyde and acetaldehyde as well as toxins such as ultrafine particles, and is acting on behalf of those consumers' interests.  The similarly situated consumers are readily identifiable through self-identification, through customer receipts, and through Defendant's own business records.

**Typicality**

62.    Plaintiff purchased Defendant's Products in California during the Class Period. Plaintiff read Defendant's representations on its website that the Products produce only a harmless "vapor."  Defendant failed to warn or disclose to Plaintiff that use of the Products purchased by Plaintiff would expose him to the carcinogens formaldehyde and acetaldehyde as well as toxins such as ultrafine particles.

63.    During the Class Period, Defendant failed to disclose the presence of the carcinogens formaldehyde and acetaldehyde as well as toxins such as ultrafine particles in the Products purchased by Class members.  Defendant also represented to the Class members that the Products purchased by Class members produce only a harmless "vapor."

64.    The claims of the representative Plaintiff are typical of the claims of the Class, in that the representative Plaintiff, like all members of the Class, purchased the Products that were represented as producing only a harmless "vapor" and Defendant failed to disclose the presence of carcinogens and other toxins in those Products.

**Adequacy**

65.    Plaintiff will fairly and adequately represent and protect the interests of the members of the class.  Plaintiff does not have any interests that are adverse to those of the class members.  Plaintiff has retained competent counsel experienced in class action litigation and

-15-

1    intends to prosecute this action vigorously.

2    **Common Questions Predominate**

3    66.    There are numerous questions of law and fact common to all class members, and

4    those questions predominate over any questions that may affect only individual class members.

5    The common questions will generate common answers that are likely to drive the resolution of this

6    action.

7    67.    Questions of law and fact common to the members of the Class that predominate

8    over questions that may affect individual Class members include:

9         a.    Whether Defendant's Products expose class members to formaldehyde,

10               acetaldehyde and other toxins such as ultrafine particles;

11        b.    Whether Defendant is under a duty to disclose the presence of carcinogens and

12               other toxins in the Products to class members;

13        c.    Whether Defendant is required to warn class members that formaldehyde and

14               acetaldehyde are chemicals known to cause cancer;

15        d.    Whether Defendant knew or should have known of the presence of

16               formaldehyde, acetaldehyde and other toxins such as ultrafine particles in the

17               Products;

18        e.    Whether Defendant failed to disclose the presence of formaldehyde,

19               acetaldehyde and other toxins such as ultrafine particles in the Products;

20        f.    Whether Defendant's failure to warn about the hazards associated with use of

21               the Products is deceptive and unfair under the UCL and CLRA;

22        g.    Whether Defendant's failure to disclose the presence of carcinogens and other

23               toxins in the Products violated the CLRA;

24        h.    Whether Defendant's failure to disclose the presence of carcinogens and other

25               toxins in the Products was likely to mislead or deceive ordinary consumers, and

26               therefore fraudulent, within the meaning of the UCL;

27        i.    Whether Defendant's affirmative representations that the Produce only produce

28               a harmless "vapor" unlike traditional cigarettes was likely to mislead or deceive

-16-

1    ordinary consumers, and therefore fraudulent, within the meaning of the UCL;

2    j.    Whether Defendant's failure to disclose the presence of carcinogens and other

3    toxins in the Products was and is unfair within the meaning of the UCL;

4    k.    Whether Defendant should be declared financially responsible for notifying all

5    class members of the presence of carcinogens and other toxins in the Products;

6    l.    Whether Plaintiff and the Class are entitled to restitution and/or compensatory

7    damages, and the method of determining the amount of such damages;

8    m.    Whether Defendant should be enjoined from engaging in the methods, acts or

9    practices alleged herein; and

10    n.    Whether Defendant should be ordered to disgorge, for the benefit of the Class,

11    its ill-gotten profits received from the sale of its Products.

12    **Superiority**

13    68.    A class action is superior to other available methods for the fair and efficient

14    adjudication of this controversy.

15    69.    The prerequisites to maintaining a class action for injunctive or equitable relief are

16    met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby

17    making appropriate final injunctive or equitable relief with respect to the Class as a whole.

18    70.    The prosecution of separate actions by individual members of the Class and would

19    create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for

20    Defendant.  For example, one court might enjoin Defendant from performing the challenged acts,

21    whereas another might not.  Additionally, individual actions could be dispositive of the interests of

22    the Class even where certain Class members are not parties to such actions.

23    71.    Defendant's conduct is generally applicable to the Class as a whole and Plaintiff

24    seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendant's

25    systematic failure to disclose material information makes declaratory and injunctive relief with

26    respect to the Class as a whole appropriate.

27    72.    A class action is superior to all other available methods for the fair and efficient

28    adjudication of this controversy.  Without a class action, individual Class members would face

1  burdensome litigation expenses, deterring them from bringing suit or adequately protecting their

2  rights.  Class members would continue to incur harm without remedy absent a class action, while

3  Defendant would continue to reap the benefits of its misconduct.  In addition, class litigation is

4  superior because it will obviate the need for unduly duplicative litigation that might result in

5  inconsistent judgments about the legality of Defendant's sales and advertising practices.

6  <u>**FIRST CAUSE OF ACTION**</u>
**(Violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*
7  Based on Deceptive Practices)**

8      73.    Plaintiff incorporates by reference the allegations contained in the preceding

9  paragraphs of this Complaint.

10      74.    By committing the acts and practices alleged herein, Defendant has violated the

11  UCL, as to the Class as a whole, by engaging in fraudulent conduct.

12      75.    Defendant's failure to disclose that the Products expose Plaintiff and the Class

13  members to carcinogens such as formaldehyde and acetaldehyde as well as other harmful toxins

14  such as ultrafine particles violates the UCL's proscription against engaging in fraudulent conduct.

15      76.    Although Defendant has detailed knowledge of the presence of toxic chemicals in

16  the aerosol produced by the Products by virtue of, among other things, Defendant's participation

17  in e-cigarette industry studies and rigorous testing of the Products, Defendant fails to disclose the

18  presence of such chemicals in the Products' aerosol to Plaintiff and the Class.

19      77.    Defendant's failure to warn Plaintiff and the Class members that use of the

20  Products would expose them to carcinogens and other toxins is likely to deceive reasonable

21  consumers.  Plaintiff and the other members of the Class were unquestionably deceived regarding

22  the safety and health benefits of the Products, as Defendant's marketing, advertising, packaging

23  and labeling of the Products omit the true facts about the toxicity of the aerosol produced by the

24  Products.  Defendant's material omissions are particularly deceptive given its partial

25  representations about the nature, health and safety of the Products' aerosol.  For example,

26  Defendant represents that the Products only produce "vapor" unlike smoke from traditional

27  cigarettes.  These acts constitute fraudulent and unfair business practices.

28      78.    Further, Defendant's failure to warn of the carcinogenic and other toxic exposures

resulting from use of the Products is contrary to California law and policy, which obligates

Defendant to provide such information to consumers.

79.     Plaintiff and the members of the Class have suffered injury in fact and have lost

money or property because they paid more for the Products as a direct result of Defendant's failure

to disclose that the Products expose them to carcinogens and other toxins and partial

representations regarding the nature, health and safety of the aerosol produced by the Products.

Had Plaintiff and the Class members known the true nature of the Products, they would not have

purchased them or they would have paid less for them.

80.     Plaintiff and the other Class members had no way of reasonably knowing that use

of the Products they purchased would expose them to the carcinogens formaldehyde and

acetaldehyde as well as other toxins such as ultrafine particles.  Moreover, Plaintiff and the other

Class members relied on Defendant's representations that the Products only contain a harmless

"vapor" unlike traditional cigarettes.  Thus, they could not have reasonably avoided the injury

each of them suffered.

81.     Defendant's violations of the UCL continue to this day.

**<u>SECOND CAUSE OF ACTION</u>**
**(Violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*
Based on Unfair Acts and Practices)**

82.     Plaintiff incorporates by reference the allegations contained in the preceding

paragraphs of this Complaint.

83.     Under Cal. Business & Professions Code § 17200, any business act or practice that

is unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates

a legislatively declared policy, constitutes an unfair business act or practice.

84.     Defendant has engaged, and continues to engage, in conduct which is immoral,

unethical, oppressive, unscrupulous and/or substantially injurious to consumers.  This conduct

includes, but is not limited to, failing to disclose that use of the Products exposes users to

formaldehyde and acetaldehyde as well as ultrafine particles while at the same time making certain

public representations regarding the nature, health and safety of the aerosol produced by the

Products.  For example, Defendant represents that the Products only produce "vapor" unlike

-19-

1   smoke from traditional cigarettes.  The gravity of harm caused by Defendant's conduct as

2   described herein far outweighs the utility, if any, of such conduct.

3       85.   Defendant has engaged, and continues to engage, in conduct that violates

4   California law and policy, which obligates Defendant to inform consumers and provide clear and

5   reasonable warnings when exposing consumers to chemicals listed by the State of California as

6   known to cause cancer.  Defendant has further engaged, and continues to engage, in conduct that

7   violates the legislatively declared policy of the CLRA against misrepresenting the characteristics,

8   uses, benefits, and quality of goods for sale.

9       86.   Defendant's conduct, including failing to disclose that use of the Products exposes

10  users to carcinogens and other toxins, and misrepresenting the health and safety benefits of the

11  Products, is substantially injurious to consumers.  Such conduct has and continues to cause

12  substantial injury to consumers because consumers would not have purchased the Products at all,

13  or would not have paid such a high price for the Products, but for Defendant's representations that

14  the Products only produce a harmless "vapor" unlike traditional cigarettes and failure to disclose

15  that use of the Products exposes the user to carcinogens and other toxins.  Consumers have thus

16  overpaid for the Products.  Such injury is not outweighed by any countervailing benefits to

17  consumers or competition.  Indeed, no benefit to consumers or competition results from

18  Defendant's conduct.  Since consumers reasonably rely on Defendant's representations of the

19  Products and injury results from ordinary use of the Products, consumers could not have

20  reasonably avoided such injury.

21      87.   Although Defendant has detailed knowledge of the presence of toxic chemicals in

22  the aerosol produced by the Products by virtue of, among other things, Defendant's participation

23  in e-cigarette industry studies and rigorous testing of the Products, Defendant fails to disclose the

24  presence of such chemicals in the Products' aerosol to Plaintiff and the Class.

25      88.   By committing the acts alleged above, Defendant has engaged in unfair business

26  acts and practices which constitute unfair competition within the meaning of Cal. Business &

27  Professions Code § 17200.

28

SECOND AMENDED CLASS ACTION COMPLAINT - Case No. 3:15-cv-04075-JD

1       89.     An action for injunctive relief and restitution is specifically authorized under Cal.

2  Business & Professions Code § 17203.

3       90.     Plaintiff and the members of the Class have suffered injury in fact and have lost

4  money or property because they paid more for the Products as a direct result of Defendant's

5  representations concerning the nature, health and safety of the Products and failure to disclose that

6  the Products expose them to formaldehyde and acetaldehyde and other toxins such as ultrafine

7  particles.  Had Plaintiff and the Class members known the true nature of the Products, they would

8  not have purchased them or they would have paid less for them.

9
**THIRD CAUSE OF ACTION**
10
**(Violations of the California Consumers Legal Remedies Act Civ. Code § 1750, *et seq.*)**

11       91.     Plaintiff incorporates by reference the allegations contained in the preceding

12  paragraphs of this Complaint.

13       92.     Defendant  R.J. Reynolds Vapor Company  is a "person" as defined by Civil Code

14  § 1761(c).

15       93.     Plaintiff and many Class members are "consumers" within the meaning of Civil

16  Code § 1761(d).

17       94.     Defendant's e-cigarette Products are "goods" within the meaning of Civil Code

18  §1761(a).

19       95.     Defendant is obligated by law to disclose the fact that the Products expose users to

20  carcinogenic chemicals.

21       96.     As alleged more fully above, Defendant violated the CLRA by failing to comply

22  with its duty to warn Plaintiff and Class members that use of Defendant's Products exposes them

23  to cancer causing chemicals such as formaldehyde and acetaldehyde and other toxins such as

24  ultrafine particles, particularly where Defendant makes partial representations regarding the

25  nature, health and safety of the Products.  For example, Defendant represents that the Products

26  only produce "vapor" unlike smoke from traditional cigarettes.  Specifically, Defendant's failure

27  to disclose material facts regarding its Products violated: (a) § 1770(a)(5)'s proscription against

28  representing that goods have characteristics or benefits they do not actually have; and (b) §

1    1770(a)(7)'s proscription against representing that goods are of a particular standard or quality

2    when they are of another.

3        97.    Although Defendant has detailed knowledge of the presence of toxic chemicals in

4    the aerosol produced by the Products by virtue of, among other things, Defendant's participation

5    in e-cigarette industry studies and rigorous testing of the Products, Defendant represents that the

6    Products produce only a harmless "vapor" and fails to disclose the presence of such chemicals in

7    the Products' aerosol to Plaintiff and the Class.

8        98.    Defendant's wrongful conduct continues to this day.

9        99.    Plaintiff and the members of the Class have suffered damage as a direct result of

10   Defendant's representations concerning the nature, health and safety of the Products and failure to

11   disclose that use of its Products exposes the user to carcinogens and other toxins such as ultrafine

12   particles.  Had Plaintiff and the Class members known the true nature of the Products, they would

13   not have purchased them or they would have paid less for them.

14       100.    Defendant's omissions and partial representations were designed to induce Plaintiff

15   and members of the Class to purchase the Products.

16       101.    If Plaintiff knew that the labels, advertisements and other representations regarding

17   Defendant's Products were truthful and not misleading, he would consider purchasing the

18   Products in the future.  At present, however, Plaintiff cannot be confident that Defendant's

19   representations regarding the Products are, and will be, truthful and non-misleading.

20       102.    Plaintiff provided Defendant with notice of his intent to seek damages under the

21   CLRA on September 8, 2015.  Defendant has not agreed to provide the relief demanded in the

22   letter.

23                              **PRAYER FOR RELIEF**

24           WHEREFORE, Plaintiff demands judgment on behalf of himself and the Class as

25   follows:

26       A.    An order certifying the proposed Class; appointing Plaintiff as representative of the

27   Class; and appointing Plaintiff's undersigned counsel as Class counsel

28

1    B.    A declaration that Defendant is financially responsible for notifying Class members

2  of the pendency of this suit;

3    C.    An award of restitution;

4    D.    An award of restitutionary disgorgement pursuant to California Business and

5  Professions Code § 17203 for members of the Class;

6    E.    An order enjoining Defendant's unlawful and deceptive acts and practices and

7  requiring Defendant to disclose the hazards associated with use of the Products and all of its

8  research regarding the toxic exposures resulting from use of its Products;

9    F.    Compensatory and/or statutory damages pursuant to Cal. Civil Code § 1780;

10    G.    Punitive damages in accordance with proof and in an amount consistent with

11  applicable precedent;

12    H.    An order awarding Plaintiff and the other Class members the reasonable costs and

13  expenses of suit, including their attorneys' fees; and

14    I.    Any further relief that the Court may deem appropriate.

15

16  DATED:  October 31, 2016          LEXINGTON LAW GROUP

17

18                    /s/ Mark N. Todzo
                      Mark N. Todzo
19                    Attorneys for Plaintiff

20

21                    SCOTT + SCOTT, ATTORNEYS AT LAW, LLP
                      Christopher M. Burke, State Bar No. 214799
22                    John Jasnoch, State Bar No. 281605
                      Kate Lv, State Bar No. 302704
23                    707 Broadway, Suite 1000
                      San Diego, CA 92101
24                    Tel: (619) 233-4565
                      Fax: (619) 233-0508
25                    cburke@scott-scott.com
                      jjasnoch@scott-scott.com
26                    klv@scott-scott.com

27

28

SECOND AMENDED CLASS ACTION COMPLAINT - Case No. 3:15-cv-04075-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph P. Guglielmo
Erin Green Comite
230 Park Avenue
17th Floor
New York, NY 10169
V: 212-223-6444
F: 212-223-6334
Email: jguglielmo@scott-scott.com
Email: ecomite@scott-scott.com

SECOND AMENDED CLASS ACTION COMPLAINT - Case No. 3:15-cv-04075-JD